IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ROBERT GUERRERO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | NO. 1:17-cv-00103 |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE |
| TAMARA FORD, | ) | FRENSLEY |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Robert Guerrero, an inmate of the Whiteville Correctional Facility in Whiteville, Tennessee, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of two counts of first degree murder and nine counts of attempted first degree murder, as well as the sentence imposed by the Circuit Court of Maury County, Maury County, Tennessee. (Doc. No. 1).

The petition is ripe for review, and this Court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the Court finds that an evidentiary hearing is not needed, and Petitioner is not entitled to relief. The petition therefore will be denied, and this action will be dismissed.

## I.    Procedural History

Petitioner was indicted by a Maury County Grand Jury for two counts of first-degree premeditated murder, two counts of first-degree felony murder, nine counts of attempted first-degree murder, and nine counts of aggravated assault. (Doc. No. 14, Attach. 1, Page ID# 113-18). A jury convicted Petitioner of two counts of first-degree murder and nine counts of attempted first-degree premeditated murder. (Doc. No. 14, Attach. 11, Page ID# 1144-49). The trial court imposed

an effective sentence of two life sentences plus 135 years. (Doc. No. 14, Attach. 2, Page ID# 266-82).

On appeal, the Tennessee Court of Criminal Appeals affirmed Petitioner's convictions and sentence. *State v. Guerrero*, No. M2008-02839-CCA-R3-CD, 2011 WL 2306078, at *1 (Tenn. Crim. App. June 8, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011). The Tennessee Supreme Court denied Petitioner's application for permission for discretionary review. (Doc. No. 14, Attach. 21, Page ID# 1537). Petitioner did not petition the United States Supreme Court for writ of certiorari. (Doc. No. 1, Page ID# 4).

On August 13, 2012, Petitioner filed a petition for state habeas relief. (Doc. No. 14, Attach. 22, Page ID# 1541-74). The habeas court summarily dismissed the petition. (*Id*. at Page ID# 1575-76). On appeal, the Tennessee Court of Criminal Appeals affirmed. *Guerrero v. Barbee*, No. W2012-01873-CCA-R3-HC, 2013 WL 1189462, at *1 (Tenn. Crim. App. Mar. 22, 2013). Petitioner did not file an application for discretionary review in the Tennessee Supreme Court.

On September 10, 2012, Petitioner filed a pro se petition for post-conviction relief in the convicting court. (Doc. No. 14, Attach. 27, Page ID# 1685-1713). The post-conviction court appointed counsel, who filed an amended petition. (*Id*. at Page ID# 1715, 1726-33). Following an evidentiary hearing, the post-conviction court denied relief. (*Id*. at Page ID# 1761-69). Petitioner appealed, and the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. *Guerrero v. State*, No. M2014-00348-CCA-R3-PC, 2015 WL 4484538, at *1 (Tenn. Crim. App. July 23, 2015), *perm. app. denied* (Tenn. Dec. 10, 2015). The Tennessee Supreme Court denied Petitioner's application for discretionary review. *Id*.

On August 11, 2014, Petitioner filed a pro se motion to correct an illegal sentence in the convicting court. (Doc. No. 14, Attach. 40, Page ID# 2985-3013). The trial court summarily

dismissed the motion for failure to state a colorable claim. (*Id*. at Page ID# 3021). On appeal, the Tennessee Court of Criminal Appeals affirmed the dismissal of the motion, and the Tennessee Supreme Court denied discretionary review. *State v. Guerrero*, No. M2014-01669-CCA-R3-CD, 2015 WL 2208546, at *1 (Tenn. Crim. App. May 11, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015).

Petitioner filed a second motion to correct an illegal sentence (Doc. No. 14, Attach. 48, Page ID# 3131-40), which argued that his nine consecutive sentences for attempted first-degree murder were illegal because the trial court failed to order consecutive sentences based on at least one of the seven criteria found in Tennessee Code Annotated § 40-35-115. (*Id*. at Page ID# 3135). The trial court denied the motion, finding that Petitioner failed to state a claim for which relief can be granted. (*Id*. at Page ID# 3145). On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of the motion, and the Tennessee Supreme Court denied discretionary review. *State v. Guerrero*, No. M2016-00481-CCA-R3-CD, 2017 WL 2417109, at *1 (Tenn. Crim. App. June 5, 2017), *perm. app. denied* (Tenn. Sept. 21, 2017).

On November 26, 2017, Petitioner filed the instant pro se petition for writ of habeas corpus in the United States District Court for the Western District of Tennessee. (Doc. No. 1, Page ID# 68). By Order entered on November 28, 2017, the Honorable S. Thomas Anderson transferred the petition to this Court. (Doc. No. 4). The Court conducted a preliminary review of the petition and determined that Petitioner had stated at least one colorable claim for relief. The Court therefore directed Respondent to file an answer, plead or otherwise respond to the petition in conformance with Habeas Rule 5. (Doc. No. 7).

Petitioner then filed motions to hold his petition in abeyance (Doc. No. 19) and for leave to file supplemental pleadings (Doc. No. 20), to which Respondent responded in opposition (Doc.

No. 22). By Order and Memorandum Opinion entered on October 1, 2018, the Court denied both motions. (Doc. No. 23). Respondent filed an answer on March 20, 2018, conceding that the petition is timely and urging the Court to dismiss the petition. (Doc. No. 15).

Petitioner asserts five grounds for relief:

1. Denial of due process when the trial court admitted into evidence the letter Petitioner purportedly wrote to Javoris Sparkman, despite the State's failure to establish a complete chain of custody (Doc. No. 1, Page ID# 5, 12-21);

2. Denial of due process when Petitioner's indictment was constructively amended due to a variance between the indictment and jury instructions, which deprived Petitioner of notice of the charges against him (Doc. No. 1, Page ID# 5, 21-26);

3. Denial of due process when the state court determined that Petitioner's sentence of life with the possibility of parole was lawfully imposed (Doc. No. 1, Page ID# 6, 26-30);

4. Trial counsel provide ineffective assistance by:

    a. Failing to conduct an adequate investigation, which led to trial counsel unreasonably relying on Petitioner's trial testimony to establish his state of mind prior to the shooting and by failing to adequately prepare Petitioner to testify (Doc. No. 1, Page ID# 6, 30-39);

    b. Erroneously informing Petitioner of his sentence exposure, preventing him from being able to make an informed decision about whether to proceed to trial or to negotiate a plea deal (Doc. No. 1, Page ID# 6, 39-43);

    c. Failing to rely on several witnesses willing to testify to Petitioner's state of mind, which led to trial counsel inadequately preparing Petitioner to testify;

post-conviction counsel failed to raise this substantial claim and failed to make an offer of proof regarding the reasons for wanting to call Jeremy Alsup in order to substantiate this claim (Doc. No. 1, Page ID# 6, 39-40, 44-48);

d.     Failing to question four jurors during voir dire about whether they saw uniformed guards escorting Petitioner during a courtroom break (Doc. No. 1, Page ID# 6, 39-40, 49-52);

e.     Failing to present a proper basis for excluding opinion testimony from an FBI handwriting expert (Doc. No. 1, Page ID# 6-7, 39-40, 52-56);

f.      Failing to seek funds for an expert to testify in regards to the fact that Petitioner's ADHD and possible PTSD would have allowed him to carry out the killing while he was still in a state of passion produced by adequate provocation of having seen his grandfather beaten and bloody for the length of time up and until the shots were fired (Doc. No. 1, Page ID# 7, 39-40, 56-60); and

5.     Petitioner was not afforded a full and fair hearing at his initial collateral proceeding (Doc. No. 1, Page ID# 61-66).

## II.     Summary of the Evidence

### A.     Trial Proceedings

The Tennessee Court of Criminal Appeals summarized the proof adduced at Petitioner's jury trial as follows:

> On April 12, 2008, several hundred people attended a Quinceanera, "Sweet 15" birthday party, at the National Guard Armory in Columbia, Tennessee. One of the victims, Jose Castro, testified that while he was at the party, a fight broke out, and police were called to the scene and people were escorted out of the building. Mr.

Castro testified that he was involved in the fight and that he saw Defendant there with three other men. One of the men with Defendant was a black male wearing an orange shirt and orange shoes. Mr. Castro left the party with ten others, including his girlfriend, Sarah Garcia, seated in the front passenger seat; Carlos Landauro, Patricia Garcia (Sarah's sister), Jonathan Trugas, and Jose Valadiz, all seated in the second row seat; and Mr. Castro's older brother, Leonizio Santas, his ten-year-old brother, Juan Castro, Jason Castro, Jonathan Zaragoza, and Dalila Cortinas, all seated in the rear area of Mr. Castro's Ford Expedition SUV.

On the way home, Mr. Castro noticed that the vehicle behind him was repeatedly speeding up and slowing down. The driver of the car following him then turned off the headlights. Mr. Castro told everyone in his vehicle to duck down because the "car behind [him] was acting suspicious." He testified that the car pulled up beside him and he heard gunshots. Mr. Castro testified that it was too dark for him to see the color of the vehicle or the people inside. He "just saw sparks." Mr. Castro was shot in his upper thigh and his "body went numb." He began "swerving and hitting the car to run it off the road." The other driver appeared to have lost control of his vehicle. Mr. Castro drove to the Williamson County Medical Center. He testified that on their way to the hospital, Sarah Garcia told him that she had been shot in the leg, and Juan Castro said that he had been "hit."

Sarah Garcia testified that she and her sister, Patty Garcia, went to the party at the Armory with Mr. Castro. She testified that many people were involved in the fight, and there was a lot of breaking bottles and throwing chairs. She did not recall seeing Defendant at the party, but she saw his co-defendant Javoris Sparkman, and she testified that he was wearing bright orange clothing. While riding home in Mr. Castro's vehicle, she also saw the car behind them, with its lights off, pull up beside the driver's side and then gunshots were fired from that vehicle into the Castro vehicle. She testified that the gunshots "just didn't stop," and they were coming from the front passenger side of the vehicle. She laid down on Mr. Castro's lap and closed her eyes. She was shot in the leg. She testified that two other passengers screamed that Mr. Castro's brother Juan had been shot and he was not responding. Her sister Patty had also been shot and was also not responding. Sarah Garcia testified that she was hospitalized for ten days and had two or three surgeries to repair her injury.

Carlos Landauro attended the party at the Armory and left with Jose Castro. He testified that he did not see the fight because he had gone to the store to buy beer. When he returned to the party, he saw police officers everywhere, and he saw a black male wearing an orange shirt trying to push officers away. Mr. Landauro was seated in the back seat behind Jose Castro. He testified that he saw sparks from gunfire and he ducked down. He was not shot, but Patty Garcia, who was sitting beside him, slumped down and was unresponsive.

Jason Castro, Jose Castro's ten-year-old brother, attended the party with his parents and brothers and left with Jose. He sat in the rear area of the SUV. He testified that

he turned around in the vehicle and saw a white car behind them while they were stopped at a stoplight. He then heard gunshots and saw gunfire, and he ducked down. He testified that his brother Juan Castro was shot. Following the incident, Jason gave a statement to Detective Alsup that someone had gotten in his father's face at the party, and his brother Juan tried to separate them. He also stated that his brothers Juan and Jose hit someone during the fight.

Emergency room physician Dr. Jerry Edwards testified that when the victims arrived at the Williamson County Medical Center in the early morning hours of April 13, 2008, he helped Sarah Garcia out of the vehicle. She was bleeding profusely from her left leg. Juan Castro and Patty Garcia were brought into the hospital in full cardiac arrest. Patty Garcia had been shot in the head, and Juan Castro had been shot in the chest. Both victims died. Dr. Edwards also treated Jose Castro, who had been shot twice in his leg.

Forensic pathologist Amy McMaster performed the autopsies on Patty Garcia and Juan Castro. She testified that Patty Garcia died from a gunshot wound to her head. Juan Castro had three gunshot wounds, two to his back and one to his shoulder. Two bullets were recovered from Mr. Castro's shoulder and chest. A third bullet that had entered Mr. Castro's back and then exited his chest was not recovered but it produced the fatal wound.

Officer Jeremy Humphrey of the Columbia Police Department responded to a call at the scene of the shooting. He testified that when he arrived, he saw shattered glass on the highway and an orange shoe lying on the road. He saw Defendant and another male standing beside a vehicle that was in the ditch. Defendant told Officer Humphrey that they had been in a fight at the Armory and another vehicle had run them off the road. He said the other vehicle was an SUV. Officer Alex McPherson also responded to the scene and discovered a rifle lying near the front of the vehicle. Defendant and the other male were immediately detained and placed under arrest. Officer McPherson testified that the weapon was an "SKS" assault rifle with a collapsible stock, which means that it can be fired like a handgun. In the gun there was a magazine containing two bullets. Officer McPherson photographed the weapon and logged it into evidence at the police department.

Detective Jeremy Alsup interviewed Defendant at the police department on April 16, 2008. Detective Alsup testified that Defendant also gave a written statement in which he denied having been involved in a fight at the Armory. Defendant stated that one of the victims had approached him and tried to hit him and that Defendant and his two friends were escorted out of the party by police. They waited outside with another friend and then left together. After leaving, he saw the victim's vehicle, and he stated that he handed "Chas" a .38 handgun and that "Chas" passed "Bodie" the SKS out of the trunk, and when they got beside them, "they opened fire." The vehicle then wrecked, and "Bodie and Chas" ran, and Defendant and his cousin stayed at the scene. In his statement, Defendant admitted "I understand what we did

was wrong, but all I can do is pray and beg for another shot at life and to let me take care of my family, please. I am not a murderer."

Corrections officer Daryl Bailey testified that he found a letter in co-defendant Javoris Sparkman's jail cell at the Maury County Jail. He gave the letter to Detective Andy Jackson. Although Detective Jackson testified that he believed he gave the letter to Detective Cash, Detective Alsup testified that he was contacted by Detective Jackson on May 7, 2008, and he later went to the Maury County Sheriff's Department and received the letter from Detective Jackson. The letter was sent along with Defendant's earlier written statement to the FBI lab for analysis.

The letter found purportedly written by Defendant stated:

> You got me f[ ]ed up bro, I didn't even want to give no statement until I talked to a lawyer that's why they kept me in the front, so I couldn't talk to little Eric and get our sh[ ] together. You act like you got away and I told on you. We left the damn chopper right next to the car. Me and E stayed looking for the gun. When they pulled up on us after you turned yourself in they questioned me and I tried to lie and say we were taking E home to the creek. And they hit us first before we started dumping, but they already knew everything from me giving Chase the gun to me saying light them up. As I started to speed up I didn't say sh[ ]. So f[ ]k what you talking about. That's some ho-a[ ]-sh[ ] for you to think like that after everything. I f[ ]ed with you fool, but f[ ]k it, I guess you can think what you want.

Peter Belcastro, Jr., a forensic handwriting examiner for the FBI, testified that he compared the written statement given by Defendant with the letter taken from co-defendant Sparkman's cell, and in his opinion, Defendant "prepared a majority of the questioned writing on the [letter]." He testified that there were "areas [of the] document that [he] could not identify and those areas would consist of over-writing, or scribbled writing, areas where there's not enough clarity and detail to make an assessment of who prepared it." Mr. Belcastro testified, however, that an "overwhelming majority" of the letter was written by Defendant.

Detective Alsup was present for the two deceased victim's autopsies. There were two bullets that were recovered from Juan Castro and one from Patricia Garcia. Detective Alsup requested that those bullets and the bullet recovered from Sarah Garcia's leg be sent to the TBI crime lab for analysis and comparison to the rifle that was recovered from the scene of the shooting.

Detective Cory Cooper testified that there were no weapons found in the victim's vehicle. He also testified that a .38 caliber weapon was never recovered in the investigation of this case. He responded to the scene of the shooting and saw a gold-colored Pontiac Grand Prix in a ditch and glass on the road. He took photographs of the vehicle and damage along the passenger side. He also collected orange-

colored paint chips from the front passenger seat of the vehicle that were consistent with the color of the victim's SUV, and he sent the paint chips collected and samples taken from the victim's vehicle to be analyzed and compared. Miranda Terry of the TBI compared the paint samples under microscopic evaluation and determined that they were consistent.

Detective Jeff Duncan photographed and collected evidence from the victim's vehicle and obtained a DNA sample from Defendant by search warrant, which he logged into evidence. He testified that there were nine bullet holes in the side of Mr. Castro's SUV, and he recovered two bullets from the inside of the vehicle.

Steve Scott, of the TBI crime lab firearms identification unit, testified that he examined the rifle and multiple bullets that were recovered in this case. He testified that the rifle used was a high-powered, semi-automatic weapon that was capable of penetrating a vehicle. He concluded that the bullet recovered from Sarah Garcia had been fired from the rifle. He also examined the bullet recovered from Patricia Garcia and two bullets recovered from Juan Castro, the deceased victims, and he concluded that they were fired from the same firearm, but not the rifle submitted for analysis. He testified that those bullets were fired from a .38 caliber handgun.

Mark Dunlap of the TBI crime lab compared DNA profiles collected from the rifle found at the scene with Defendant's DNA sample and determined that the rifle was handled by three people. He tested several components of the rifle, including the grip, forearm, stock, bolt, magazine and strap for touch DNA and found a mixture of three people's DNA. He testified that Defendant was a "major contributor" in that his DNA was found in the highest levels on the grip of the rifle. He also determined that Defendant was a "minor contributor" to the forearm and strap of the rifle. The trigger of the rifle was also tested, but there was an insufficient DNA profile to determine to analyze.

Defendant testified that he was at the party at the Armory that night. He had known co-defendant Javoris Sparkman ("Bodie") for six years and co-defendant Charles Kelly ("Chas") for one year. His co-defendant Eric Guerrero is his cousin. All four men went to the party together. Defendant testified that they had gone to the party earlier that night and left, and after they returned, they were not there long before the party broke up. He testified that they walked in and "it looked like a riot." There were broken bottles and chairs everywhere. Defendant testified that his grandfather, who was also at the party, had been hit in the mouth, although Defendant did not see the person who hit his grandfather. After the police arrived, Defendant was trying to leave through the back door when someone from the victim's family tried to grab him. Javoris Sparkman grabbed that person and told him to "chill out" and "back up." They were then escorted out the front door by police officers and told to leave.

Defendant testified that he did not know any of the victims before that night. Defendant was told that one of the victims had hit his grandfather. Defendant saw

the victims leave in Mr. Castro's Ford Expedition, and he pulled away behind them. Defendant was driving, Chas was in the back passenger seat, Javoris Sparkman was in the front passenger seat, and Eric Guerrero was behind the driver's seat. He testified that they caught up to the victims' vehicle and pulled up beside it. He testified that he "wasn't in [his] right mind" because of what he had seen happen to his grandfather. Defendant was carrying a .38 caliber revolver "on [him]" and that he had an SKS assault rifle in his trunk, but he did not know who the rifle belonged to. Defendant claimed that he did not know why the rifle was in his trunk, but he was the only one who knew it was there. He testified that as they followed the victims' vehicle, he and his co-defendants did not discuss what they were going to do because "it was understood what was going on." As they pulled up to the victims' vehicle, Defendant told the others that there was a rifle in the trunk. Defendant's vehicle had a pass through between the trunk and the back seat. Someone in the back seat passed the rifle to the front, and Defendant gave his .38 to Chas because, he testified, Chas asked for it.

Defendant testified that he did not know how many people were in Mr. Castro's vehicle. He testified,

> We didn't think that there was that many people in the vehicle,....
>
> We just seen bald heads jumpin' in there. We seen the guys that was involved in the fight. We didn't seen none of them, all the women that was in the vehicle. I mean, if we would have known there was all them women in the vehicle, I mean, come on, you know, I mean, you can't, it wouldn't have happened the way, you know, it was all messed up. That was all wrong.

Defendant admitted that he wrote the letter to Javoris Sparkman, and he admitted that he had lied to detectives about the events of that night. He testified that he did not remember telling anyone to "light 'em up," and he thought that phrase had been "put in his head" by the detectives. Defendant denied that he shot any of the victims. Defendant testified, however, that he sped up in order to keep up with the victim's vehicle and that Sparkman and Charles Kelly fired upon the vehicle.

*State v. Guerrero*, No. M2008-02839-CCA-R3-CD, 2011 WL 2306078, at **1-5 (Tenn.

Crim. App. Sept. 21, 2011).

### B.    <u>Post-Conviction Proceedings</u>

The Tennessee Court of Criminal Appeals summarized the proof adduced at Petitioner's

post-conviction evidentiary hearing as follows:

Trial counsel testified that he had practiced law for close to 22 years and that he had been involved in "between two and three dozen" death penalty cases. Trial counsel testified that he represented the petitioner at trial and on direct appeal. Trial counsel estimated that he met with the petitioner "a half dozen times" between June 2, 2008, and November 10, 2008, when the petitioner's jury trial began.

Trial counsel acknowledged that he did not hire an investigator but explained that he did not believe that investigative services were necessary in this case. Trial counsel explained that, due to the judicial district's open file policy, he was privy to all of the discovery materials, which totaled 577 pages. Trial counsel conceded that the petitioner "didn't testify particularly well." With respect to the petitioner's testimony, trial counsel stated that he had emphasized the importance of the petitioner's conveying his anger over the injury to his grandfather and that he was puzzled that the petitioner did not properly convey this point during his trial testimony. Trial counsel testified that the petitioner's responses during his direct examination testimony were "stunning," expounding that "the way [the petitioner] talked on the stand was foreign to the way we had talked before," given how "very articulate" and "on top of" the case the petitioner was during trial preparation. Trial counsel admitted that he did not interview any of the birthday party attendees, and counsel could not recall whether he had spoken to the petitioner's grandfather. Trial counsel moved to exclude any reference to gangs or gang activity, which motion was granted by the trial court.

When asked to give the primary reason for the petitioner's testifying at trial, trial counsel answered as follows:

> From a legal perspective, my recollection is that we needed—we needed this information out about his uncle [sic] and that it upset him.
>
> Because my view was, if we could get this down to a voluntary manslaughter type situation, where, you know, he's doing something; he's acting irrationally, based on something that occurred.
>
> ....
>
> His grandfather had been assaulted and he was—right, wrong, or indifferent, he was upset over it and that these series of events occurred as a result of that.
>
> Now, really, the only way you're going to get that out in most cases is for the [d]efendant to get up here and say, "This is how I was feeling."
>
> ....

> And when it comes to putting the defendant[ ] up, ultimately, it's the [d]efendant's choice and we talked about it.
>
> ....
>
> But from a defense perspective, it was a pretty tough case to defend against. And my recollection is the situation with his grandfather was the best piece of information I had, that I could do something with to limit his involvement, or minimize it, mitigate it.
>
> ....
>
> ...I don't recall any other information that would have been able to do what you're talking about, to tell what the [petitioner] is thinking, what's going on through his mind, with respect to his grandfather other than the [petitioner] in this case.

Trial counsel was adamant that he "did not force [the petitioner] to testify" but acknowledged that he likely encouraged the petitioner to testify because "that was the best shot of a defense that we had with this case."

Susan Jaime, the petitioner's aunt, testified that she was present at the Quinceanera when the fight began. She noticed that her father, Augustine Guerrero, who is the petitioner's grandfather, had blood on his face. Ms. Jaime conceded that Mr. Guerrero was not seriously injured; although "he had a lot of blood on his face," he only sustained a busted lip. As Ms. Jaime was attending to Mr. Guerrero, the petitioner approached and asked what had happened. Ms. Jaime responded that she did not know and that "[s]omebody hit" Mr. Guerrero, though she did not see it happen. The petitioner was "trying to find out who hit" Mr. Guerrero, but Ms. Jaime told the petitioner that her father was fine and that the petitioner should "[j]ust go home." A few minutes later, Ms. Jaime saw the petitioner leave the party. Ms. Jaime described the petitioner as "very angry" and "escalated." Ms. Jaime testified that someone other than trial counsel had asked if she was willing to testify on the petitioner's behalf, and she had responded, "'Absolutely.'"

The petitioner testified that trial counsel met with him about "three hour[s] total" and that trial counsel never adequately prepared him to testify. The petitioner believed that his testimony at trial was unnecessary because trial counsel could have used Ms. Jaime, Mr. Guerrero, and "so many others" to establish the petitioner's state of mind following the injury to Mr. Guerrero. The petitioner stated that he informed trial counsel that he did not want to testify but that trial counsel told him "if [he] didn't testify [they] couldn't present that theory of the case" and that the petitioner's testimony was "the only way [they] can introduce that type of evidence." The petitioner admitted that he had stated at trial that he was "an accessory to murder" and admitted that he was driving the vehicle when the

shooting occurred, but the petitioner insisted that he did not understand the law of criminal responsibility. The petitioner agreed that he was "pretty nervous" when he testified at trial and opined that his nervousness was "misinterpreted" by the jury.

*Guerrero v. State*, No. M2014-00348-CCA-R3-PC, 2015 WL 4484538, at \*\*4-5 (Tenn.

Crim. App. July 23, 2015).

## III.     Standard of Review

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court explained, the AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). The AEDPA, therefore, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of the AEDPA's most significant limitations on the federal courts' authority to issue writs of habeas corpus is found in 28 U.S .C. § 2254(d). Under the AEDPA, the court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The state court's factual findings are presumed to be correct, and they can be contravened only if the petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1). State-court factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woo*ds, 692 Fed. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (internal quotation marks omitted)). As the Supreme Court has advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). Review under § 2254(d) (1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citation omitted); *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (the substance of the claim must have been presented as a federal constitutional claim). This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Pillette v. Foltz*,

824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review").

Claims which are not exhausted are procedurally defaulted and "ordinarily may not be considered by a federal court on habeas review." *Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002). Procedural default also occurs where the state court "actually . . . relie[s] on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Miss.*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[ ] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.

"In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the lack of review." *Alley,* 307 F.3d at 386. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)). A petitioner may establish cause by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id.* Constitutionally ineffective assistance of trial or appellate counsel may constitute cause. *Murray*, 477 U.S. at 488–89. Generally, however, if a petitioner asserts ineffective assistance of counsel as cause for a default, that ineffective assistance claim must itself have been presented to the state courts as an independent claim before it may be used to establish cause. *Id.* If the ineffective assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the

underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

Petitioners in Tennessee also can establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance by demonstrating the ineffective assistance of post-conviction counsel in failing to raise the claim in initial review post-conviction proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 5-6 (2012) (creating an exception to *Coleman* where state law prohibits ineffective assistance claims on direct appeal); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (extending *Martinez* to states with procedural frameworks that make meaningful opportunity to raise ineffective assistance claim on direct appeal unlikely); *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014) (holding that *Martinez* and *Trevino* apply in Tennessee). The Supreme Court's creation in *Martinez* of a narrow exception to the procedural default bar stemmed from the recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 566 U.S. at 13. In other words, *Martinez* requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding," and that "the underlying ineffective-assistance-of-trial-counsel claim [be] a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See id.* at 13-15. Importantly, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman*.

To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his <u>actual</u> and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "When a

petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the Supreme Court also has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 496).

## IV.    Analysis

With these principles in mind, the Court turns to the examination of the claims raised in Guerrero's petition for habeas relief.

### A.    Claim 1:  Denial of Due Process Because the Trial Court Admitted Letter into Evidence over Defendant's Objection

First, Petitioner alleges that the trial court violated his due process rights when the court admitted into evidence a letter purportedly written by Petitioner to Sparkman even though the State failed to establish the letter's complete chain of custody.  (Doc. No. 1, Page ID# 5, 12-21). According to Petitioner, the "letter was substantively very damaging against the Petitioner, which arguably provided evidence about attempting to get a story straight, admissions of having the assault rifle, attempting to lie to the police regarding the victim's shooting first, about the Petitioner giving someone a gun and the Petitioner driving the car and speeding up."  (*Id*. at Page ID# 14). Petitioner claims that the admission of the letter "was so prejudicial that its admission rendered his entire trial fundamentally unfair as to deny him due process."  (*Id*. at Page ID# 13).

In order to qualify as exhausted, a claim must have been presented to the state's highest court, *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990), and must have been presented in a form which allows the state court a full and fair opportunity to rule on the claim. *Justices of Boston*

*Mun. Court v. Lydon*, 466 U.S. 294, 302-303 (1984); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A prisoner exhausts a claim by "fairly present[ing]" it to the appropriate trial and appellate courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003) (internal quotation marks omitted), *abrogated on other grounds by English v. Berghui*s, 529 Fed. App'x 734 (6th Cir. 2013). "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citation omitted).

Because relief under Section 2254 can only be based upon a violation of the United States Constitution or law or treaties of the United States, the claim must have been presented as an issue of federal constitutional law, not state law. *See Anderson v. Harless*, 459 U.S. 4, 6-7 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (internal citations omitted); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984) (holding that a petitioner must have presented his claim in the state court "as a federal constitutional issue-not merely as an issue arising under state law.").

Here, Petitioner failed to exhaust Claim 1 as a federal claim in the state court proceedings because he failed to present this claim as one of federal constitutional law. On direct appeal to the Tennessee Court of Criminal Appeals, Petitioner argued that "the trial court erred in allowing the handwritten letter attributed to defendant into evidence over defendant's objection to the chain

of custody and hearsay issues related to Officers Alsup and Jackson." (Doc. No. 14, Attach. 15 at Page ID# 1364). In support of his argument, Petitioner cited only state law cases and the Tennessee Rules of Evidence. (*Id*. at Page ID# 1365-66). The Tennessee Court of Criminal Appeals analyzed Petitioner's chain of custody argument by applying state evidentiary and case law. *State v. Guerrero*, 2011 WL 2306078, at *12. Petitioner failed to cite any federal case law employing a constitutional analysis with respect to the pertinent federal right alleged and failed to present his federal constitutional claim in a manner that fairly alerted the state court to the federal nature of his claim.

By failing to present the federal constitutional claim alleged in the instant petition to the state courts, Petitioner procedurally defaulted the claim. He, therefore, has waived his claim for purposes of federal habeas corpus review unless he establishes cause for the default and actual prejudice as a result of the alleged errors. Petitioner does not argue that he can satisfy the cause and prejudice requirement, and nothing in the record indicates that Petitioner can make a showing of a fundamental miscarriage of justice. Consequently, this claim must be dismissed as procedurally defaulted.

### B.      Claim 2:    Denial of Due Process Due to Fatal Variance Between Indictment and Jury Instructions

In Claim 2, Petitioner alleges that there was a fatal variance between the indictment and the jury instructions because he was convicted under a theory of criminal responsibility not charged in the indictment. (Doc. No. 1, Page ID# 21-26). Petitioner contends that this variance resulted in a constructive amendment of the indictment, which deprived him of his right to due process. (*Id*. at Page ID# 21). Petitioner states that "[t]his issue encompasses both the attempted murder indictments and the trial court's instruction to the jury on criminal responsibility, which were both raised by trial counsel and adjudicated by the state court." (*Id*.)

19

### a.     Attempted First-Degree Murder Indictments

On direct appeal of his convictions and sentence, Petitioner argued that the indictments for attempted first-degree murder should have been dismissed because they did not specifically allege attempt and failed to provide adequate notice that Petitioner committed an overt act. (Doc. No. 14, Attach. 15, Page ID# 1368-70).

A discrete set of Rules governs federal habeas proceedings launched by state prisoners. *Mayle v. Felix*, 545 U.S. 644, 654 (2005). Habeas Rule 2(c) provides that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *See McFarland v. Scott*, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring and dissenting) ("[T]he habeas petition, unlike a complaint, must allege the factual underpinning of the petitioner's claims."). Rule 2 is "more demanding" than Federal Rule of Civil Procedure 8(a), which provides that in "ordinary civil proceedings, a complaint need only provide 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Mayle*, 545 U.S. at 655 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A petitioner's failure to fulfill the pleading requirements of Habeas Rule 2(c) provides an appropriate basis for dismissal. *See Creech v. Taylor*, No. 13-165-HRW, 2013 WL 6044359, at *2 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support"); *Morris v. Motley*, 2007 WL 3171538, at *1 (W.D. Ky. Oct 26, 2007) (dismissing Section 2254 petition lacking factual allegations or other specifics); *Cook v. Crews*, 2008 WL 4499993, at *4 (W.D. Ky. Oct. 1, 2008) (dismissing claim in Section 2254 petition because the petition "contains no specific allegations....").

In the section of his petition devoted to this claim, Petitioner does not set forth any facts to support his allegation that the indictments for attempted first-degree murder were deficient because

they failed to allege attempt and an overt act. Instead, he argues that the indictments were deficient because they did not charge him with criminal responsibility. (Doc. No. 1, Page ID# 21-26). Consequently, Petitioner has failed to properly plead a claim that the indictments for attempted first-degree murder should have been dismissed because they did not specifically allege attempt and failed to provide adequate notice that Petitioner committed an overt act. The Court leniently construes pro se pleadings but that liberality "does not require a court to conjure allegations on a litigant's behalf...." *Erwin v. Edwards*, 22 Fed. Appx. 579, 580 (6th Cir. 2001). Dismissal of the claim, therefore, is appropriate under Habeas Rule 2.

### b.  Criminal Responsibility

On direct appeal, Petitioner argued that the trial court's jury instruction on criminal responsibility was improper based on a variance in the proof submitted at trial and the original charges because the indictments did not charge criminal responsibility. (Doc. No. 1 at Page ID# 1370-73). As the Tennessee Court of Criminal Appeals summarized Petitioner's argument:

> Defendant submits that he was charged in the indictment as the "principal"; however, the proof at trial was that Defendant did not kill the victims or attempt to kill the victims. Defendant argues that the trial court effectively allowed the State to constructively amend the indictment to charge the Defendant with criminal responsibility.

*State v. Guerrero*, 2011 WL 2306078, at *15.

Because relief under Section 2254 can only be based upon a violation of the United States Constitution or law or treaties of the United States, Petitioner must have presented this claim to the state courts as an issue of federal constitutional law, not state law. *See Anderson v. Harless*, 459 U.S. 4, 6-7 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (internal citations omitted). Petitioner's brief to the Tennessee Court of Criminal Appeals relied on "the

current state of the law in Tennessee," citing no federal cases and making no federal constitutional arguments. (Doc. No. 14, Attach. 15, Page ID# 1370-73). True, in the final sentence of the section of his brief addressing this claim, Petitioner cited the Sixth and Fourteenth Amendments to the United States Constitution. (*Id*. at PageID # 1373). However, this passing reference was insufficient to exhaust the claim for purposes of federal habeas review. *See Knighton v. Mills*, No. 3:07-cv-2, 2011 WL 3843696, at *11 (E.D. Tenn. Aug. 29, 2011) (finding that federal habeas claim was not properly exhausted when the petitioner's direct appeal brief "made a passing mention of the U.S. Constitution, without reference to a specific section of the Constitution and without citation to authority") (citing *Gray v. Netherland*, 518 U.S. 152, 162-62 (1996) (in order to exhaust a claim, the substance of the claim must have been presented to the state courts as a federal constitutional claim)).

Because he failed to present the claim as one of federal constitutional law, Petitioner failed to exhaust this claim as a federal claim in the state court proceedings. By failing to present the federal constitutional claim alleged in the instant petition to the state courts, Petitioner committed a procedural default. He, therefore, has waived his claim for purposes of federal habeas corpus review unless he establishes cause for the default and actual prejudice as a result of the alleged errors. Petitioner has not argued or demonstrated cause and prejudice to overcome the default, nor has he made a showing of a fundamental miscarriage of justice. The claim is without merit and must be denied.

### C.    Claim 3:  Denial of Due Process by Imposing Illegal Sentence

Petitioner contends that the trial court illegally sentenced him to life imprisonment with the possibility of parole, which he states is a sentence that does not exist in Tennessee. (Doc. No. 1, Page ID# 26-28, 30). He claims that he was "denied his Due Process [rights] when the State

court made an unreasonable determination of the facts in light of the evidence presented when it determined the sentencing court's sentencing the Petitioner to a life with the possibility of parole was not an unconstitutional sentence nor was it considered a structural error." (*Id*. at Page ID# 26).

A claim that the state courts misapplied Tennessee law in sentencing Petitioner is not cognizable in a federal habeas petition. *See* 28 U.S.C. § 2254(a) (a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). Error in the application of state law is not cognizable in a federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). Simply put, this Court cannot consider whether Guerrero's sentence was imposed in violation of Tennessee law. *See Smith v. Parker*, No. 10-1158-JDB-egb, 2013 WL 5409783, at *30 (W.D. Tenn. Sept. 25, 2013) (dismissing as procedurally defaulted the petitioner's federal habeas claim that Tennessee courts misapplied state law in sentencing him where petitioner couched his claim to the state courts as arising under state law only). Therefore, Petitioner is not entitled to relief for Claim 3. The claim will be dismissed.

Further, Petitioner did not present this claim to the Tennessee Court of Criminal Appeals as a violation of federal law. In his appeal of the denial of his first Rule 36.1 motion, Petitioner argued that his sentence was illegal because Tennessee Code Annotated § 40-35-501(i)(1)(2)(a) did not authorize a sentence of life with the possibility of parole. (Doc. No. 14, Attach. 41, Page ID# 3031). In over nine pages of analysis, he failed to cite any federal case law employing a constitutional analysis with respect to the pertinent federal right alleged and failed to present his

federal constitutional claim in a manner that fairly alerted the state court to the federal nature of his claim. (*Id.* at Page ID# 3031-3040). He focused instead on the language of the Tennessee statute and the intent of the Tennessee General Assembly, the Tennessee Judicial Academy, and the Tennessee Attorney General. (*Id.*) Even if the Court could consider this claim, Petitioner procedurally defaulted it and has not shown cause for the default and actual prejudice as a result of the alleged error. Further, Petitioner has not made a showing of a fundamental miscarriage of justice. This claim, like the others thus far, will be dismissed.

### D.       Claim 4:  Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 686-87; *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland*, 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

As discussed above, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); that it "involved an unreasonable application of" such law; or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1),(2). Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, such as here, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As the Supreme Court clarified in *Harrington*:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under

AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101 (internal quotation marks and citation omitted).

Here, Respondent argues that Petitioner has procedurally defaulted five of his ineffective assistance of counsel sub-claims and that he cannot show cause and prejudice to excuse the defaults. (Doc. No.15 at 26). Further, Respondent argues that Petitioner's remaining ineffective assistance sub-claim fails on the merits and should be dismissed. (*Id*.)

Petitioner concedes that he did not present Claims 4(b)-(f) to the state court and, consequently, those claims are procedurally defaulted. (Doc. No. 1, Page ID# 39). However, Petitioner maintains that he demonstrates cause to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014). (*Id*.) According to Respondent, however, Petitioner cannot demonstrate that any of the underlying claims are substantial; therefore, Petitioner cannot show cause to excuse the defaults, and the Court should dismiss the claims. (Doc. No. 15 at Page ID# 3221).

### 1. Claim 4(a): Trial counsel's failure to investigate Petitioner's case

In Claim 4(a), Petitioner contends that his trial attorney was constitutionally ineffective because he failed to investigate any of the other individuals attending the Armory party who could have testified about Petitioner's reaction to seeing his grandfather injured, causing trial counsel to "unreasonably rel[y]" on Petitioner's testimony to establish his state of mind prior to the shooting. (Doc. No. 1, Page ID# 32, 34-39). Petitioner also claims that trial counsel failed to prepare him adequately to testify. (*Id*. at Page ID# 32).

Respondent maintains that, to the extent Petitioner's factual and legal allegations in this action are the same as the allegations he raised during his appeal from the denial of his post-conviction petition, the state court's adjudication on these issues was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence before the state court. (Doc. No. 15 at Page ID# 3221-22).

### a.     Counsel's failure to prepare Petitioner to testify

Petitioner alleged in his post-conviction petition that trial counsel's performance was deficient because he failed to properly prepare Petitioner to testify. (Doc. No. 14, Attach. 33, Page ID# 2848-50). At his post-conviction hearing, Petitioner testified that trial counsel met with him about three hours total and that trial counsel did not adequately prepare him to testify. *Guerrero*, 2015 WL 4484538, at *5. Petitioner testified that he believed his testimony at trial was "unnecessary." *Id*. Petitioner also stated that he was "pretty nervous" when he testified at trial and believed his nervousness was "misinterpreted" by the jury. *Id*. The post-conviction court denied relief, accrediting trial counsel's testimony over that of Petitioner:

> Petitioner was provided by the [c]ourt with a highly skilled trial lawyer and one of the best in our judicial district. With some 22 years of trial practice, [trial counsel] is the most experienced criminal defense lawyer in the district. He has been involved in some two to three dozen capital cases, and has defended five defendants charged with capital murder. The Court has always found [trial counsel] to be an honest person of great integrity; he knows and understands each and every aspect of the case; he knows the law; and he zealously represents his clients.
>
> ....
>
> The [c]ourt does not find [p]etitioner to be credible. He is a desperate man who blames others for his lot in life. He blames law enforcement for putting words in his mouth when he is the one who asked to talk to law enforcement when taken into custody; he blames [trial counsel] for his taking the stand and making a mess of his testimony; and he blames the criminal justice system for two consecutive life

sentences plus 135 years for convictions resulting from his ordering the execution of innocent victims.

*Id*. at *5.

In evaluating Petitioner's claim that trial counsel was ineffective in failing to prepare Petitioner to testify, the Tennessee Court of Criminal Appeals set forth the proper legal standard for claims of ineffective assistance of counsel:

> Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," see Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn.1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697.

> When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn.Crim.App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn.Crim.App.1992).

> Claims of ineffective assistance of counsel are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn.2010); *State v. Honeycutt*, 54 S.W.3d 762, 766–67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn.1999). When reviewing the application of law to the trial court's factual findings, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457–58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

*Guerrero*, 2015 WL 4484538, at **6-7.

In applying this standard, the Tennessee Court of Criminal Appeals found that Petitioner failed to establish that trial counsel did not adequately prepare Petitioner for his trial testimony, noting that the evidence did not preponderate against the post-conviction court's finding that Petitioner is "very intelligent", that his claim that he failed to understand the meaning of criminal responsibility was "disingenuous", and that he "made a terrible witness" despite trial counsel's "discuss[ing] at length" his trial strategy. *Guerrero,* 2015 WL 4484538, at *7. The appellate court agreed with the post-conviction court that Petitioner failed to prove that trial counsel's performance was deficient or prejudicial, ultimately concluding that "the record overwhelmingly supports the post-conviction court's denial of relief." *Id.*

The Court "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732,737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes the state courts' credibility findings. *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2001). Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). A state court's credibility finding on a particular issue may be overturned by a habeas court only when "evidence on the issue[ ] raised ... is too powerful to conclude anything but" that the trial court's finding was unreasonable. *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).

Here, the state courts' findings, including its credibility assessments, were not unreasonable. Trial counsel testified during Petitioner's post-conviction hearing that during the pendency of Petitioner's case he met with Petitioner "half a dozen times" between June 2, 2008, and November 10, 2008, when Petitioner's jury trial began. *Id*. at *4. He conceded that Petitioner

"didn't testify particularly well." *Id.* With respect to Petitioner's testimony, trial counsel further testified

> that he had emphasized the importance of the petitioner's conveying his anger over the injury to his grandfather and that he was puzzled that the petitioner did not properly convey this point during his trial testimony. Trial counsel testified that the petitioner's responses during his direct examination testimony were "stunning," expounding that "the way [the petitioner] talked on the stand was foreign to the way we had talked before," given how "very articulate" and "on top of" the case the petitioner was during trial preparation.

*Id.* The post-conviction court called Petitioner's demeanor at trial "obnoxious" and "arrogant" and found him to be a "desperate man." Conversely, the court found trial counsel to be "an honest person of great integrity." As a result, the court credited trial counsel's testimony over Petitioner's testimony when it found that counsel had not performed deficiently in preparing Petitioner to testify. Petitioner has not rebutted the presumption that the state court's credibility findings are correct. *Mitchell*, 325 F.3d at 737-38; *Skaggs*, 235 F.3d at 266. The Court finds that Petitioner has not shown that he is entitled to relief on this claim because the appellate court's determination was not contrary to *Strickland*. Neither was the appellate court's ineffective assistance determination based on an unreasonable determination of the facts or an unreasonable applicable of *Strickland's* standards to those facts. Thus, Petitioner is not entitled to relief on this claim.

### b. Counsel's failure to investigate the case

Petitioner also claims that his trial attorney was constitutionally ineffective because he failed to investigate Petitioner's case. Specifically, Petitioner claims that trial counsel failed to investigate any of the other individuals attending the Armory party who could have testified about Petitioner's reaction to seeing his grandfather injured, causing trial counsel to "unreasonably rel[y]" on Petitioner's testimony to establish his state of mind prior to the shooting. (Doc. No. 1, Page ID# 32, 34-39).

Petitioner raised this claim in his post-conviction petition and on appeal of the denial of his petition for post-conviction relief. The post-conviction court noted trial counsel's decision to "mitigat[e] liability by showing strong provocation on the part of petitioner relative to the perceived injuries to his grandfather" and stated that it "does not question trial strategy." *Guerrero*, 2015 WL 4484538, at *6. In concluding that Petitioner had "failed to carry his burden of proof" and denying the petition for post-conviction relief, the court opined that Petitioner "had the privilege of being represented by an outstanding defense attorney ... who is skilled in the law and ... goes to great lengths to protect the rights of his clients." *Id*. at *6.

On appeal of the denial of post-conviction relief, the Tennessee Court of Criminal Appeals applied *Strickland* and concluded that the evidence in the record supported the post-conviction court's conclusion that trial counsel's performance was not deficient or prejudicial. *Guerrero*, 2015 WL 4484538, at *7. The court found that trial counsel's decision to urge Petitioner to testify was a reasonable trial strategy premised on the need to advance the defense of strong provocation. *Id*. The court further held that "such a tactical decision was clearly made after adequate preparation on the part of trial counsel, and we will not second-guess this reasonable trial strategy." *Id*.

The state courts' findings were not unreasonable. During Petitioner's post-conviction hearing, trial counsel testified that, after learning Petitioner's grandfather had been injured during an altercation at the Armory and that Petitioner was angry and upset about what happened to his grandfather (Doc. No. 14, Attach. 28, Page ID# 1809, 1820-21, 1864), trial counsel determined that "the situation with [Petitioner's] grandfather was the best piece of information" available to the defense to mitigate Petitioner's involvement with the shooting. (*Id*. at Page ID# 1838). Trial counsel believed that a voluntary manslaughter defense was "the best way" to try the case. (*Id*. at

Page ID# 1840, 1842). Trial counsel explained that the primary reason he wanted Petitioner to testify was because the defense "needed this information out about his [grandfather] and that it upset him." (*Id*. at Page ID# 1836). Trial counsel opined that in many cases, the only way to establish a voluntary manslaughter defense was "for the Defendant to get up here and say, 'This is how I was feeling.'" (*Id*. at Page ID# 1836-37).

Trial counsel recalled that he made a strategic choice regarding whether to call other witnesses to testify about Petitioner's grandfather's injuries. (*Id*. at Page ID# 1858-59). Trial counsel believed that the defense could not establish provocation based on other witnesses testifying that Petitioner's grandfather was assaulted because these witnesses could not provide the jury with insight to Petitioner's "thought process." (*Id*. at Page ID# 1859). In other words, even if Ms. Jaime and Petitioner's grandfather testified, they could not have testified about how Petitioner felt after seeing his grandfather, or about how Petitioner's reaction to his grandfather's injuries caused him to participate in the shooting. Based on this record, it was not unreasonable for the Tennessee Court of Criminal Appeals to conclude that trial counsel made a tactical decision that was based on adequate preparation. Petitioner is not entitled to relief, and the Court should deny this claim.

Moreover, Petitioner fails to show how better preparation for trial would have resulted in a reasonable probability of a different trial outcome considering the evidence against him. *See Kelley v. United States,* No. 1:13-cv-70, 1:08-cr-51, 2014 WL 2921821, at *14 (E.D. Tenn. June 27, 2014) (holding that petitioner's unsupported claims of what counsel failed to do, without any evidence of what a more thorough investigation would have revealed, was insufficient to demonstrate by a preponderance of the evidence that counsel performed deficiently; moreover, even assuming that counsel performed deficiently, petitioner failed to establish a reasonable

probability, that had counsel conducted a more extension investigation, the outcome of Petitioner's case would have been different). The Sixth Circuit has instructed that when "one is left with pure speculation on whether the outcome of [the criminal proceeding] could have been any different, [there is] an insufficient basis for a successful claim of prejudice." *Baze v. Parker*, 371, F.3d 310, 322 (6th Cir. 2004), *cert. denied,* 544 U.S. 931 (2005).

The Court finds that Petitioner has not shown that he is entitled to relief on this claim because the appellate court's determination was not contrary to *Strickland*. Neither was the appellate court's ineffective assistance determination based on an unreasonable determination of the facts or an unreasonable applicable of *Strickland's* standards to those facts. It is a "longstanding and sound principle that matters of trial strategy are left to counsel's discretion." *Dixon v. Houk*, 737 F.3d 1003, 1012 (6th Cir. 2013). In order to fairly assess an attorney's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

Further, state courts' determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted. Claim 4(a) is without merit and will be dismissed.

### 2. Claim 4(b): Trial counsel erroneously informed Petitioner of potential sentence he faced

Petitioner asserts that trial counsel erroneously informed him that he was facing a sentence of "life with the possibility of parole" for the first-degree murder charges when such a sentence is prohibited by statute. (Doc. No. 1, Page ID# 40-43). Petitioner claims that, by erroneously

advising him of his potential sentence exposure, trial counsel failed to provide Petitioner with critical information for deciding whether he should go to trial, testify at trial, or seek a plea agreement.  (*Id*. at Page ID# 40, 43).  According to Petitioner, if he had been aware of his potential sentence exposure, "he had a high likelihood to have obtained a plea deal."  (*Id*. at 43).

Petitioner did not raise this claim in his petition for post-conviction relief.  Because he has never fully and fairly presented Claim 4(b) to the state courts, and a state procedural rule prohibits the state court from extending further consideration to the claim, the claim is deemed exhausted (since there is no "available" state remedy) but procedurally defaulted from federal habeas review. *See Coleman*, 501 U.S. at 752-53.  Thus, federal habeas review of the claim is barred unless Petitioner can demonstrate that cause and prejudice will excuse the procedural default or that failure to consider the claim will result in a fundamental miscarriage of justice.  *See Harris*, 489 U.S. at 262; *Coe,* 161 F.3d at 329-30.

Petitioner acknowledges his default of this claim and argues that the ineffectiveness of his post-conviction counsel excuses the default. (Doc. No. 15 at Page ID# 39).  In order words, the petitioner alleges that post-conviction counsel was ineffective in failing to raise trial counsel's ineffectiveness in failing to explain to Petitioner how much time he was facing, and post-conviction counsel's ineffectiveness constitutes cause for Petitioner's procedural default of Claim 4(b).  Indeed, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9.

The Sixth Circuit has directed a district court considering ineffective assistance of counsel claims under *Martinez* and *Trevino* to first address whether the petitioner can demonstrate "(1) the absence or ineffective assistance of his post-conviction counsel and (2) the 'substantial' nature of

his underlying [ineffective assistance of trial counsel claims]." *Woolbright v. Crews*, 791 F.3d 628, 637 (6th Cir. 2015). If the petitioner demonstrates these first two elements, the petitioner has established cause to excuse the procedural default, and the district court must then determine whether the petitioner can establish prejudice from the alleged ineffective assistance of trial counsel. *See id.* If the petitioner successfully establishes cause and prejudice, the final step is for the district court to evaluate the underlying ineffective assistance of trial counsel claims on the merits. *See Atkins v. Holloway*, 792 F.3d 654, 659–60 (6th Cir. 2015).

In demonstrating a substantial claim of ineffective assistance of trial counsel, the petitioner must prove prejudice under *Strickland*. *See McGuire v. Warden, Chillicothe Corr. Inst*., 738 F.3d 741, 752 (6th Cir. 2013) ("To be successful under *Trevino*, [a petitioner] must show a 'substantial' claim of ineffective assistance, and this requirement applies as well to the prejudice portion of the ineffective assistance claim." (internal citations omitted)). Under *Strickland*, a petitioner can prove prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 668, 694. As one court explains:

> The "actual prejudice" requirement of *Coleman* and the prejudice requirement of *Strickland* overlap such that in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was "substantial" enough to satisfy the "actual prejudice" prong of *Coleman*. If not, because the "cause and prejudice" standard is conjunctive rather than disjunctive, the reviewing court would have no need to consider whether the petitioner has established cause to overcome the procedural default, in the form of ineffective assistance of post-conviction counsel.

*Thorne*, 2014 WL 4411680, at \*23. The Supreme Court has defined this "substantial" showing as requiring a petitioner to show that the claim has some merit. *Martinez*, 566 U.S. at 14 (citing

*Miller-El v. Cockrell*, 537 U.S. 322, (2003)). The threshold inquiry "does not require full consideration of the factual or legal basis supporting the claims." *Miller–El*, 537 U.S. at 336, 338.

As previously mentioned, the Court is required to undertake a preliminary analysis of Petitioner's underlying ineffective assistance of trial counsel claim in order to determine whether the claim has some merit. *See Martinez*, 566 U.S. 1, 14. Petitioner argues that trial counsel was ineffective "when he erroneously informed the Petitioner of the correct amount of time he was facing in order to make an informed decision whether to proceed to trial or negotiate a plea deal…." (Doc. No. 1 at Page ID# 40).

*Martinez*, however, does not provide relief because the defaulted claim is not substantial; it does not have merit. 566 U.S. at 14. Even if counsel erroneously informed Petitioner that he was facing a sentence of "life with the possibility of parole" for the first-degree murder charges when such a sentence is prohibited by statute, a sentence of life imprisonment in Tennessee provides that a prisoner is eligible for release after serving fifty-one years of the sentence. Tenn. Code Ann. § 40-35-501(h)(1)(i)(1), i(2)(A). Thus, even if counsel mistakenly used the phrase "possibility of parole," he nevertheless accurately informed Petitioner that he faced a sentence of life imprisonment with release eligibility—the exact sentence Petitioner received. Although the life imprisonment sentences imposed do not entitle Petitioner to parole, Tennessee statutes permit his release from confinement after serving fifty-one years. *See id*. § 40-35-501(g). Therefore, Petitioner cannot show that trial counsel's advice was deficient.

Even assuming *arguendo* that counsel performed deficiently, Petitioner has not established that he was prejudiced by the purported failure of trial counsel to inform Petitioner of the sentence he faced. *See Coleman*, 501 U.S. at 750. Petitioner now alleges that trial counsel's failure prevented him from attempting to plead guilty. However, during his post-conviction hearing,

Petitioner testified that trial counsel told him "that the D.A. was not even talking about plea bargains, that everybody was going to trial." (Doc. No. 14, Attach. 28, Page ID# 1941). Thus, even if trial counsel had accurately informed Petitioner, there is no evidence that doing so would have had an appreciable effect on Petitioner's conviction and sentence. This claim is not substantial, and Petitioner has not shown that he was prejudiced by post-conviction counsel's failure to raise it. Therefore, Petitioner cannot demonstrate cause and prejudice to excuse his procedural default of Claim 4(b). The claim is without merit and will be dismissed.

### 3.      Claim 4(c):   Trial counsel's failure to investigate

Petitioner alleges that trial counsel provided ineffective assistance by failing to thoroughly investigate his case and that post-conviction counsel was ineffective by failing to make an offer of proof regarding that ineffective assistance of trial counsel claim. (Doc. No. 1, Page ID# 44-48). Although there is some overlap,[1] this claim is distinguishable from Claim 4(a) in that Petitioner's focus is on a statement he made in his letter to Sparkman. Petitioner wrote that the police "already knew every thang [sic] from me giving [Lowe-Kelley] the gun to me saying light them up as I started to speed up." (Doc. No. 14, Attach. 12, Exh. 7, Page ID# 16). Petitioner claims that he did not formulate the phrase "light them up" himself. (Doc. No. 1, Page ID# 45). He alleges that, instead, police officers said the phrase to him, which then caused him to use the phrase in his letter to Sparkman. (*Id*. at Page ID# 45-47). He claims that, if trial counsel had thoroughly investigated the case, he would have learned that Detective Alsup actually said the phrase "light them up." (*Id*.) Trial counsel then could "have rebutted the State's case in chief and thereby proved that this 'order

---

[1] To the extent Petitioner may be attempting to assert a freestanding claim of ineffective assistance of post-conviction counsel, he is not entitled to relief. *See Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings."); *see also Wallace v. Sexton*, 570 F. App'x 443, 454 (6th Cir. 2014) ("The Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim.")

to kill' theory was flawed and factually untrue." (*Id*. at Page ID# 45).  Ultimately, Petitioner claims that post-conviction counsel was ineffective by failing to make an offer of proof in the form of Detective Alsup's testimony. (*Id*. at Page ID# 48).

Petitioner did not raise this claim in his petition for post-conviction relief.  Because he has never fully and fairly presented Claim 4(c) to the state courts, and a state procedural rule prohibits the state court from extending further consideration to the claim, the claim is deemed exhausted (since there is no "available" state remedy) but procedurally defaulted from federal habeas review. *See Coleman*, 501 U.S. at 752-53.  Thus, federal habeas review of the claim is barred unless Petitioner can demonstrate that cause and prejudice will excuse the procedural default or that failure to consider the claim will result in a fundamental miscarriage of justice.  *See Harris*, 489 U.S. at 262; *Coe*, 161 F.3d at 329-30.

Petitioner acknowledges his default of this claim and argues that the ineffectiveness of his post-conviction counsel excuses the default. (Doc. No. 15 at Page ID# 39).  However,  Petitioner is not entitled to relief because he cannot show that the underlying claim is substantial.  Petitioner admitted to using the phrase in his letter to Sparkman, regardless of whether Detective Alsup or Petitioner said the phrase "light them up" initially. (Doc. No. 14, Attach. 11, Page ID# 1124). Moreover, Petitioner testified at trial that he did not say the phrase "light them up" (*Id.* at Page ID# 1123, 1124, 1136) and explained to the jury that he wrote the phrase in his letter to Sparkman because police officers "put" the phrase in his head—the same argument he now makes. (*Id*. at Page ID# 132-33).

Even assuming *arguendo* that Petitioner established that trial counsel's preparation and investigation was constitutionally deficient, the state courts' conclusion that Petitioner had not demonstrated prejudice as a result of the failure of counsel was not an unreasonable application of

clearly established federal law, nor was it based upon an unreasonable application of the facts in light of the evidence before the state court.

In any event, the evidence against Petitioner was significant, making it unlikely that Petitioner's conviction rested on who first used the phrase "light them up." Petitioner admitted that drove the car following the victims (Doc. No. 14, Attach. 11, Page ID# 1135); that he had control over the guns that were used in the shootings (*Id*. at Page ID# 1120, 1128, 1130); that he was in complete control of the car and that no one else knew the rifle was in the trunk (*Id*. at Page ID# 1135, 1131); that there was not much conversation in the car because "it was understood what was going on" (*Id*. at Page ID# 1133); that he informed his co-defendants about the gun in the trunk, and someone retrieved the gun and passed it to Sparkman (*Id*. at Page ID# 1134, 1136); that Petitioner passed his .38 to Lowe-Kelley (*Id*. at Page ID# 1135); and that he sped up next to the victims' car, at which point Sparkman and Lowe-Kelley opened fire (*Id*. at Page ID# 1136). Based on this evidence, Petitioner cannot demonstrate a reasonable probability that, but for some alleged failure on counsel's part to show that Petitioner did not originate the phrase "light them up," the result of his trial would have been different. Therefore, he cannot show that the underlying claim is substantial.

The Court finds that Petitioner has failed to show that counsel's conduct with regard to this claim was constitutionally deficient. Neither does Petitioner show resulting prejudice. Consequently, Petitioner has not established cause and prejudice sufficient to overcome his procedural default of Claim 4(c). This claim is without merit and will be dismissed.

### 4. Claim 4(d): Failure to question jurors

Petitioner contends that trial counsel was ineffective by failing to conduct further voir dire or request a curative instruction after four jurors saw Petitioner being escorted to the restroom by

uniformed guards. (Doc. No. 1, Page ID# 49-52). According to Petitioner, three of the jurors were chosen for his case, and a fourth juror was removed due to his preconceived notions about the Hispanic community. (*Id*. at Page ID# 49, 51). Petitioner claims that trial counsel should have questioned the other three jurors to determine whether the fourth juror conveyed his "preconceived notions, thoughts, or ideas about Hispanics." (*Id*. at Page ID# 50).

Because Petitioner has never fully and fairly presented Claim 4(d) to the state courts, and a state procedural rule prohibits the state court from extending further consideration to the claim, the claim is deemed exhausted (since there is no "available" state remedy) but procedurally defaulted from federal habeas review. *See Coleman*, 501 U.S. at 752-53. Thus, federal habeas review of the claims is barred unless Petitioner can demonstrate that cause and prejudice will excuse the procedural default or that failure to consider the claims will result in a fundamental miscarriage of justice. *See Harris*, 489 U.S. at 262.

Petitioner acknowledges his default of this claim and argues that the ineffectiveness of his post-conviction counsel excuses the default. Stated differently, the petitioner alleges that post-conviction counsel was ineffective by failing to raise trial counsel's alleged ineffectiveness in failing to conduct further voir dire or request a curative instruction, and post-conviction counsel's ineffectiveness constitutes cause to excuse Petitioner's procedural default of Claim 1(d).

However, Petitioner cannot show that the underlying claim is substantial. During voir dire, four uniformed officers escorted Petitioner to the restroom, and potential jurors Frakes, McKervey, Galloway, and Porter saw Petitioner as they were escorted into the courtroom. (Doc. No. 1, Page ID# 49). Trial counsel asked the trial court to strike the jurors from the panel. (Doc. No. 14, Attach. 8, Page ID# 607). He told the trial court he did not wish to voir dire the jurors because he believed further voir dire would have been "absolutely counter[-]productive." (*Id*. at Page ID# 608).

On direct appeal, Petitioner argued that the trial court erred by refusing to strike McKervey, Galloway, and Porter from the panel. (Doc. No. 14, Attach. 15, Page ID# 1356-59). The Tennessee Court of Criminal Appeals rejected this argument, finding that Petitioner was not deprived of his right to due process. *Guerrero*, 2011 WL 2306078, at **8-9. The court noted that there was no indication that Petitioner suffered prejudice from the brief encounter with the jurors. *Id.* (quoting *Baker*, 751 S.W.2d at 164).

Because there was no prejudice based on the fact that jurors briefly and inadvertently saw Petitioner being escorted to the bathroom, Petitioner cannot show that he suffered any prejudice under *Strickland* based on counsel's lack of further voir dire or a curative instruction. Moreover, the record reflects that trial counsel made a strategic decision not to voir dire the jurors. Trial counsel considered the possibility of questioning the potential jurors about the incident and determined that drawing attention to the issue would cause further problems for Petitioner. (Doc. No. 14, Attach. 8, Page ID# 608).

Additionally, the record contradicts Petitioner's claim that Frakes was excused based on his "preconceived perception about Hispanics." (Doc. No. 1, Page ID# 49). The record shows that the trial court excused Frakes because he had formed an opinion about Petitioner's guilt or innocence that he could not set aside. (*Id.* at Page ID# 604-05). Petitioner's allegation that Frakes had a prejudice toward the Hispanic community that could have impacted McKervey, Galloway, and Porter is not supported by the record. The claim of ineffective assistance of trial counsel regarding these four jurors, therefore, is not substantial. Nor can Petitioner show that he was prejudiced by post-conviction counsel's failure to raise this claim. Therefore, Petitioner cannot demonstrate cause and prejudice to excuse his procedural default of Claim 4(b). The claim is without merit and will be dismissed.

### 5.     Claim 4(e):  Challenge to the FBI handwriting analysis

Petitioner contends that trial counsel was ineffective in challenging the testimony of the handwriting expert from the Federal Bureau of Investigation ("FBI"). (Doc. No. 1, Page ID# 52-56).  According to Petitioner, trial counsel should have attempted to find an expert to rebut the testimony of the FBI's expert. (*Id*. at Page ID# 54).

Because Petitioner has never fully and fairly presented Claim 1(e) to the state courts, and a state procedural rule prohibits the state court from extending further consideration to the claim, the claim is deemed exhausted (since there is no "available" state remedy) but procedurally defaulted from federal habeas review.  *See Coleman*, 501 U.S. at 752-53. Thus, federal habeas review of the claims is barred unless Petitioner can demonstrate that cause and prejudice will excuse the procedural default or that failure to consider the claims will result in a fundamental miscarriage of justice.  *See Harris*, 489 U.S. at 262.

Petitioner acknowledges his default of this claim and argues that the ineffectiveness of his post-conviction counsel excuses the default.  However, Petitioner cannot show that the underlying claim is substantial. At Petitioner's post-conviction hearing, trial counsel testified that he made a strategic decision regarding the manner in which he challenged the opinion of the FBI expert. (Doc. No. 14, Attach. 28, Page ID# 1825-34).  Trial counsel testified that he specifically considered attempting to rebut the FBI expert's testimony with a second expert, but he did not think he "was going to get anywhere with that at all." (*Id*. at Page ID# 1828-29).  As a result, trial counsel decided to argue that the opinion was nothing more than a lay opinion without a scientific basis. (*Id*. at Page ID# 1829). Trial counsel felt that attempting to counter the expert testimony was not something on which he "needed to spend any more resources, and effort, and time" when trial counsel was able to look at the handwriting "and come up with a pretty good opinion [himself]."

(*Id.*) He believed that "the best approach to this thing was to try and cut it off at the knees, which is, any opinion is garbage on handwriting opinions. And that's what I tried to do." (*Id.* at Page ID# 1834).

Trial counsel's testimony shows that he made a tactical choice not to counter the FBI expert's analysis with another expert, and it is a "longstanding and sound principle that matters of trial strategy are left to counsel's discretion." *Dixon*, 737 F.3d 1003, 1012. Petitioner cannot show that trial counsel's performance was deficient. As such, he cannot show that the underlying ineffective assistance claim is substantial, and he cannot show cause to excuse the default of this claim. This claim therefore will be dismissed.

### 6. Claim 4(f): Failure to seek funds for an expert to testify that PTSD and ADHD would have supported a voluntary manslaughter defense

Petitioner contends that trial counsel was ineffective "by failing to seek funds for an expert to testify in regards to the fact that Petitioner's ADHD [Attention Deficit Hyperactive Disorder] and PTSD [Post Traumatic Stress Disorder] would have supported the fact that he was still in a state of passion produced by adequate provocation . . ." at the time of the shootings. (Doc. No. 1, Page ID# 56). In his amended petition for post-conviction relief, Petitioner argued that "trial counsel failed to sufficiently explore his substance abuse and/or mental health in order to exclude any mitigation or relief that may have been afforded by a professional finding of same." (Doc. No. 14, Attach. 27, Page ID# 1730). The post-conviction court considered and rejected the claim on the merits. (Doc. No. 14, Attach. 27, Page ID# 1767). However, on appeal of the denial of the post-conviction petition, counsel did not raise these claims. (Doc. No. 14, Attach. 33 at Page ID# 1-50).

Thus, the claims are considered to be exhausted (because no further state review is available) but procedurally defaulted (because they were never presented to the state appellate

court), and may not be considered by the federal court on habeas review unless Petitioner demonstrates both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors. *See Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8 (1992) (failure to develop facts in state court constitutes procedural default, subject to *Coleman's* cause-and-prejudice standard), *superceded in other part by statute,* 28 U.S.C. 2254(e)(2) (1996).

It is well settled, however, that the ineffective assistance of counsel during post-conviction appeal does not constitute cause to overcome procedural default. *Coleman*, 501 U.S. 722, 742-53 (1991); *Martinez*, 566 U.S. 1, 18. Specifically, the *Martinez* exception does not apply to claims that were raised at the post-conviction initial review proceeding but not preserved on post-conviction appeal. *West v. Carpenter*, 790 F.3d 693, 698-99 (6th Cir. 2015) (holding that "attorney error at state post-conviction appellate proceedings cannot excuse procedural default under the *Martinez-Trevino* framework."). This is because a petitioner whose claims were heard on the merits on post-conviction initial review has received the opportunity *Martinez* was fashioned to guarantee: to ensure that "the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial review collateral proceeding." *Martinez*, 566 U.S. at 11. Accordingly, ineffective assistance of post-conviction appellate counsel does not qualify as cause to excuse claims defaulted at that stage of proceedings. *See Young v. Colson*, No. 3:12-CV-00304, 2015 WL 9581768, at *11 (M.D. Tenn. Dec. 30, 2015) (Trauger, J.) (denying petitioner's claims based on ineffectiveness of post-conviction appellate counsel, relying on *Martinez* and *Coleman*).

Unlike *Martinez*, Petitioner "'had his day in court on this claim'" because it was adjudicated during the initial review post-conviction proceeding. *Smith v. Carpenter*, No. 3:99-cv-0731, 2018 WL 317429, at *13 (M.D. Tenn. Jan. 8, 2018), *appeal filed* (6th Cir. Feb. 6, 2018)

(quoting *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012)). Therefore, even if post-conviction counsel's failure to present expert testimony at the hearing "resulted in the rejection of a potentially meritorious claim for reasons 'traceable directly to [post-conviction] counsel's deficient advocacy,' that deficiency did not cause the default of the claim in order to trigger *Martinez's* application." *Id*. (quoting *West*, 790 F.3d at 698-99) (emphasis in *Smith*). As a result, Petitioner cannot excuse the procedural default of this claim. The claim will be dismissed.

**E.    Due Process Right to Full and Fair Hearing**

Respondent points out that Petitioner writes that he was denied his due process rights to a full and fair hearing when he was not permitted to call Jeremy Alsup as a witness at the post-conviction hearing (Doc. No. 1, Page ID# 60-66), although Petitioner does not list this claim as a separate claim at the beginning of his petition when he enumerates his claims for habeas relief. (*Id*. at Page ID# 5-7.)

Petitioner raised this claim on appeal of the denial of post-conviction relief, and the Tennessee Court of Criminal Appeals found that it was unable to review the lower's court's exclusion of Alsup's testimony because Petitioner failed to make an offer of proof. *Guerrero*, 2015 WL 4484538, at *7. Without the offer of proof, Petitioner had waived the issue and appellate review was precluded. *Id*. (citing *State v. Hall*, 958 S.W.2d 679, 691 n.10; Tenn. R. Evid. 103).

Section 2254(a) provides that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986). A due process claim

related to collateral post-conviction proceedings, even if resolved the petitioner's favor, would not "result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because [the court] would not be reviewing any matter directly pertaining to his detention." *Id*. at 247. Accordingly, the Sixth Circuit has repeatedly held that errors in post-conviction proceedings do not directly challenge the judgment pursuant to which a petitioner is in custody and, therefore, are outside the scope of federal habeas corpus review. *See Roe v. Baker,* 316 F.3d 557, 571 (6th Cir. 2002); *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings cannot provide a basis for federal habeas relief"); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief"); *Kirby*, 794 F.2d at 248 ("the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings").

If the Court held in favor of Petitioner on this post-conviction due process claim, the result would not be the release of Petitioner or a reduction in Petitioner's time to be served. Neither would a favorable ruling in any other way affect Petitioner's detention because the Court would not be reviewing any matter directly pertaining to his detention. *See Kirby*, 794 F.2d at 245–47. Petitioner's due process claim based on alleged errors in the state post-conviction proceedings, therefore, is not cognizable. *Noles v. Osborne*, No. 3:10-cv-01124, 2011 WL 2471547, at **16-17 (M.D. Tenn. June 21, 2011)). The claim will be dismissed.

## V.     Conclusion

For the reasons set forth herein, the petition filed by Robert Guerrero seeking relief under Section 2254 will be denied, and this action will be dismissed with prejudice. All of Petitioner's claims are either procedurally defaulted or fail on the merits.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Because jurists of reason would not disagree with the resolution of Petitioner's claims, the Court will deny a COA.

An appropriate order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE